IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

JAMES MOORE,
*Defendant*.

CRIMINAL No. ELH-04-0190

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a motion for reduction of sentence filed by the self-represented defendant, James Moore, pursuant to Section 404 of the First Step Act. ECF 311. Defendant also seeks appointment of counsel. ECF 332.

In April 2007, a jury in the District of Maryland convicted Moore of five offenses: conspiracy to distribute five kilograms or more of powder cocaine and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count One); conspiracy to possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count Two); and three counts relating to the discharge or possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Three, Four, and Seven). ECF 135. At sentencing in July 2007, pursuant to §§ 2D1.1(d)(1) and 2K2.1(c)(1) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), Judge Andre M. Davis applied the murder cross-reference under U.S.S.G. § 2A1.1(a) and sentenced Moore to a total term of life imprisonment plus 35 years. ECF 142; ECF 301, ¶ 26.[1]

---

[1] Judge Davis was elevated to the Fourth Circuit in 2009. Thereafter, in July 2011, the case was reassigned to me. *See* Docket.

By Memorandum Opinion (ECF 302) and Order (ECF 303) of July 19, 2022, I granted, in part, a motion for compassionate release filed by defendant. *See* ECF 277, ECF 285, ECF 299, ECF 300.[2] Specifically, I reduced defendant's total sentence from life imprisonment plus 35 years, to 40 years (480 months). Of particular relevance, I reduced Moore's sentence for Count One from life imprisonment to 25 years of imprisonment in an effort to arrive at a total sentence that is reasonable and appropriate.

A few months later, Moore, proceeding pro se, filed a "Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582 and or Pursuant to Section 404 of the First Step Act." ECF 311 ("Motion"). In correspondence of February 2023, defendant clarified that the Motion "is not a compassionate release motion, but rather a motion pursuant to Section 404 of the First Step Act . . . ." ECF 316 (emphasis omitted).

The Office of the Federal Public Defender has declined to supplement the Motion. ECF 314. Nor will it seek appointment of counsel for defendant. *Id.*

In the Motion (ECF 311), Moore contends that he is eligible for relief pursuant to Section 404 of the First Step Act, based on his conviction for Count One, which charged conspiracy to distribute and possess with intent to distribute five kilograms or more of powder cocaine and fifty grams or more of cocaine base (*i.e.*, "crack" cocaine), in violation of 21 U.S.C. § 846. *Id.* at 4. Section 404 of the First Step Act of 2018 ("2018 FSA"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222, made retroactive the Fair Sentencing Act of 2010 ("2010 FSA"), Pub. L. No. 111-220, 124 Stat. 2372.[3] Among other things, the 2010 FSA increased the threshold drug quantities

---

[2] Moore's first submission was submitted without the assistance of counsel. But, counsel was subsequently appointed and the motion was supplemented several times.

[3] I previously considered application of the Fair Sentencing Act of 2010 in reducing defendant's sentence. *See* ECF 302 at 42 n.18, 43.

needed to trigger mandatory minimum sentences for crack cocaine offenses.  Prior to the 2010 FSA, a defendant convicted of distributing five grams or more of crack cocaine faced a mandatory minimum term of five years of incarceration.  And, a defendant convicted of that same offense, involving fifty grams or more of crack cocaine, faced a mandatory minimum sentence of ten years of incarceration.  The 2010 FSA increased the quantity to trigger the five-year mandatory minimum from five grams to twenty-eight grams of cocaine base.  And, to trigger the ten-year mandatory minimum sentence, it increased the threshold quantity from fifty grams to 280 grams of crack cocaine.

With that background, Moore argues that, if he were sentenced today, the term of imprisonment as to Count One, the offense involving crack cocaine, would be less than the current term he is now serving.  ECF 311 at 5.  In particular, Moore asserts that the mandatory minimum sentence for Count One would be five years as opposed to ten years, and that his Guidelines range for Count One would be 92–115 months, which is "far less than the 300-month term imposed." *Id.* at 9.  And, according to Moore, "judges in this District commonly impose sentences for actual murder convictions" that are less than defendant's current sentence, for "what were actual narcotic violations." *Id.* at 13, 16.  He also points to his achievements while in prison, such as completion of "numerous rehabilitative programs" and helping "other prisoners in need . . . ." *Id.* at 9. Moreover, Moore contends that he would not pose a danger to the public if released because "he has learned to respect the rule of law" and has been rehabilitated. *Id.* at 11.

The government opposes the Motion.  ECF 324 ("Opposition").  It contends, *inter alia*, that the Court has already considered the arguments advanced by defendant. *Id.* at 10.  Moreover, the government argues that "[t]here is neither a statutory nor a Guidelines basis" to reduce defendant's sentence. *Id.* at 11.  Further, it maintains that defendant's "reduced 40-year sentence

is not out of step with current sentencing practices." *Id.* at 12.  And, in its view, the factors in 18 U.S.C. § 3553(a) "weigh against any further reduction" of defendant's sentence.  *Id.* at 13.

Moore replied.  ECF 325 ("Reply").  Among other things, he points out that he did not previously file a § 404 motion.  *Id.* at 6.  He also claims that, in the Court's prior ruling, "it was aware of the changes" in the law but it "did not actually go into a guideline analysis as to the covered offense at issue here."  *Id.*

Moore is now 60 years of age.  He is presently incarcerated at FCI Fairton in New Jersey. https://www.bop.gov/inmateloc/ (search by BOP Register Number 41523-037) (last accessed January 24, 2025).  Defendant has served approximately 255 months of his 480-month sentence, or approximately 53 percent.   He has a projected release date of June 12, 2039. https://www.bop.gov/inmateloc/.

As indicated, Moore seeks the appointment of counsel.  ECF 332.  Of relevance, I previously appointed counsel for defendant in connection with his motion for compassionate release.  *See* ECF 282, ECF 283.  At this time, however, I am satisfied that Moore has ably presented his contentions.  Therefore, I shall deny his request for counsel.  Moreover, no hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.

For the reasons that follow, I shall deny the Motion.

## I. Factual Background and Procedural History[4]

Moore and codefendant Porsha Harper were charged with various drug and firearms offenses in an Indictment issued on April 7, 2004. ECF 1. Walter Babb was added as a defendant in a superseding indictment filed on August 11, 2004. ECF 10. Superseding indictments were also filed on September 1, 2004, and April 6, 2006. *See* ECF 24; ECF 106.

Harper pleaded guilty to an Information (ECF 120) on November 9, 2006. *See* Docket, 11/9/2006. The Information charged Harper with obstruction of justice.

The Third Superseding Indictment (ECF 106) charged Moore and Babb with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count One); conspiracy to possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count Two); two counts of discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Three and Four, regarding the shootings of Willie Robinson and Alexandria Withers); two counts of use of a firearm to commit murder in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(j) (Counts Five and Six); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Seven).

---

[4] Many of the filings in the case predate electronic access. Aside from two filings in 2007 (ECF 131; ECF 142), electronic filings do not begin until November 25, 2008, with ECF 176.

Over the years, I have gained considerable familiarity with the case. I incorporate here the factual background set forth in the following opinions: my Memorandum Opinion of July 19, 2022 (ECF 302), resolving Moore's motion for compassionate release; my Memorandum Opinion of June 4, 2021 (ECF 275), resolving the compassionate release motion filed by codefendant Walter Babb; the factual recitation set forth in my Memorandum Opinion of April 10, 2012 (ECF 197), resolving post-conviction petitions brought by Moore and Babb under 28 U.S.C. § 2255; and the factual account recited in my Memorandum Opinion of October 24, 2024 (ECF 330), resolving Babb's motion for reconsideration (ECF 306).

Babb and Moore proceeded to a jury trial that began on April 2, 2007. *See* Docket. The following summary of the facts is drawn primarily from the government's submission for Moore's Presentence Report ("PSR"). ECF 301.[5] The submission was based on the evidence presented at trial. *Id*. ¶¶ 6–18.

From at least 2002 through his arrest in 2003, Moore was part of a drug trafficking organization that distributed large quantities of powder cocaine and crack cocaine in Maryland. *Id*. ¶¶ 17–18. The evidence showed that during the course of the conspiracy, Babb purchased and distributed well over 1.5 kilograms of cocaine base. *Id*. ¶ 17. For example, from late 2002 to early 2003, Babb weekly bought and distributed a half kilogram of crack cocaine, which he obtained from his source of supply, Richard Jackson. *Id*. And, from the spring of 2002 until the fall of 2002, Babb bought nine ounces of crack cocaine approximately twice a week from Jackson. *Id*.

In July 2003, Moore received at least 30 grams of crack cocaine from Willie Robinson. *Id*. ¶ 18. And, as late as 2004, while Moore was detained in the Cecil County Detention Center, he facilitated the delivery of some 200 grams of crack cocaine to an associate, and later two ounces of mixed crack and powder cocaine. *Id.*

During the conspiracy, Moore travelled to El Paso, Texas to broker high-volume cocaine purchases. *Id*. In September 2003, Moore travelled to El Paso in an unsuccessful attempt to buy a kilogram of cocaine. *Id*. And, in September or October of 2003, Moore, along with Babb, Robinson, and Alexandria Withers, again travelled to El Paso. *Id*. Moore was to "act as the middle-man for a multi-kilo cocaine transaction" between Robinson and an El Paso source of supply, Rey Sanchez. *Id*. Babb returned from the trip with a quantity of crack cocaine, although

---

[5] Judge Davis's Chambers file contained a copy of the PSR. I submitted it for docketing in July 2022. *See* ECF 301.

the exact amount is unknown. *Id.* According to several witnesses, half the deal was done in El Paso and the other half of the deal was to be completed on November 5, 2003, in Greensboro, North Carolina, where Babb lived, at a meeting to which Robinson brought at least $100,000. *Id.* ¶¶ 10, 18; ECF 271 (Babb PSR), ¶¶ 10, 28. Apparently, Moore and Robinson had a monetary dispute. ECF 182-1 (Moore's motion under 28 U.S.C. § 2255), at 9.

In early November 2003, Moore and Babb robbed and murdered Withers and Robinson, the two associates who had accompanied them in regard to the El Paso drug transaction. ECF 301, ¶¶ 7–18. Autopsies and ballistics evidence revealed that "Withers had been shot nine times with a 9mm pistol, probably a Glock, and that Robinson had been shot five times, most likely with the same gun. Both had been shot in the head, with several of the shots at very close range." *Id.* ¶ 9.

The murders were discovered on November 6, 2003, when Maryland State Trooper James Cameron stopped a Dodge Intrepid for speeding, while the vehicle was traveling northbound on Interstate 95 in Cecil County. *Id.* ¶ 7. At the time, Moore was driving and Harper was in the passenger seat. *Id.* The Intrepid was registered to Barbara Hayes, the mother of Robinson's son, who testified that she gave the car to Robinson in September 2003. *Id.* ¶ 11. During the traffic stop, Moore stated that he did not have a driver's license; that his name was "James Evans;"[6] and that he was traveling from South Carolina to New York. *Id.* ¶ 7. Trooper Cameron patted Moore down after noticing a bulge in one of his pockets, and he discovered approximately $1,000 in Moore's pocket. ECF 197 (Memorandum Opinion of April 10, 2012, resolving motion to vacate), at 4. The officer was suspicious because of the cash; discrepancies in statements by Moore and Harper regarding Moore's name, their destination, and ownership of the Intrepid; and because the

---

[6] Evans is the last name of Moore's mother. ECF 301, ¶ 7.

rear end of the vehicle was unusually low. *Id.*; ECF 301, ¶ 8. The trooper called for backup, and two additional officers responded. ECF 197 at 4.

Trooper Cameron continued to speak with Harper, who appeared shaken. *Id.* Trooper Cameron commented on the unusually low rear end of the vehicle. Harper then asked the trooper if he wanted to look in the trunk. *Id.*; ECF 301, ¶ 8. The officer answered in the affirmative. ECF 197 at 4. Harper opened the trunk, which revealed two corpses. *Id.*; ECF 301, ¶ 8. The bodies were later identified as those of Robinson and Withers. ECF 301, ¶ 9.

Each body was wrapped in bedding, garbage bags, and a shower curtain liner. *Id.* ¶ 13. The bedding and shower liner were identified at trial as having come from Babb's residence in North Carolina. *Id.* Notably, Moore's fingerprints were recovered from the bags wrapped around the bodies, as well as a separate trash bag recovered from the trunk. *Id.* As noted, subsequent autopsies and firearm examinations revealed that both Withers and Robinson had been shot multiple times, including in the head, and from a very close range. *Id.* ¶ 8.

Moore and Harper were both arrested at the scene. *Id.* In a post-arrest statement to a trooper, Moore stated that he was a drug dealer, and that he transported "coke and 'weed'" from El Paso to New York for an El Paso drug dealer. *Id.* ¶ 10. Moore admitted that he had fired a handgun and several other firearms recently, while in South Carolina. *Id.* He also disclosed that he had over $100,000 in a green backpack in the Intrepid, to be used to pay for cocaine in New York, and that he had been given both the money and the Intrepid by "people in North Carolina." *Id.* And, Moore gave varying accounts of how he had met Harper, but he did not mention Babb. *Id.* Notably, he denied knowledge of the bodies in the trunk, stating that he had never looked in the trunk, never used the car before, and that it was not his car. *Id.*

The green backpack was recovered from the Intrepid. *Id.* ¶ 16. It had belonged to Devin Bush, a son of Davita Bush, with whom Moore had lived until September 2003 in Andrews, South Carolina. *Id.* It contained $100,380 in cash, most of it bundled in money wrappers. *Id.* Robinson's fingerprints were found on two of these money wrappers. *Id.* And, Moore's fingerprints were found on one of the money wrappers. *Id.* The backpack also contained a leopard head pendant identified as belonging to Withers. *Id.* According to the government, the money found in the backpack was the money brought by Robinson to the meeting in Greensboro on November 5, 2003, to complete the drug deal. *Id.* ¶ 18.

Other items were recovered from the Intrepid or Moore's person. The sum of $1,500 was recovered from Moore's left pocket, and $767 was found in his right pocket; a five-dollar bill was found in his right pocket that had a blood stain from which Robinson's DNA was recovered. *Id.* ¶ 12. Another garbage bag was recovered from the trunk containing clothing of the victims, including a baseball hat that had blood matching Robinson's DNA. *Id.* ¶ 14. The bag also contained a floral bath mat and a black shower curtain, both identified as coming from Babb's Greensboro residence, as well as four spent 9 mm shell casings. *Id.* Moore's fingerprints were recovered from the garbage bag. *Id.* The passenger compartment of the Intrepid contained a black duffel bag with a tan "Charlie Brown shirt" belonging to Moore. *Id.* ¶ 15. A bloody stain on this shirt matched Robinson's DNA. *Id.* Two plastic containers of gasoline were found in the rear passenger compartment. *Id.* Various Express Mail receipts and Western Union money orders "in the name of Moore to Davita Bush" were recovered, sent from El Paso and Greensboro in October 2003. *Id.* ¶ 16. Other items included a map to El Paso; a calendar with Babb's phone number written on it; and a pen inscribed with the name of an El Paso auto repair business. ECF 197 at 5.

After the arrest of Moore and Harper, Babb paid Harper's bail ($21,000 in cash) and sent at least $35,000 to Davita Bush. ECF 301, ¶ 18. The government claimed that this supported the conclusion that Moore had only half of the money taken from Robinson. *Id.* Babb also changed his cell phone number, moved out of his house, and disposed of some of his furniture. ECF 271, ¶ 32. Robinson's DNA was later recovered from the cushion of one of the discarded couches. *Id.*

Babb was arrested in Greensboro in August 2004. *Id.* ¶ 47. After his arrest, officers executed a search warrant at Babb's home and discovered two assault rifles, a Glock pistol, a scale, some Ecstasy pills, and an identification card for Babb. ECF 197 at 6.

Prior to the submission of the case to the jury, the government dismissed Counts Five and Six. *Id.* at 7. On April 19, 2007, the jury convicted Moore of all remaining counts: Counts One, Two, Three, Four, and Seven. ECF 135. Babb was convicted of Counts One, Two, and Seven, but the jury was unable to reach a verdict as to Counts Three and Four, the § 924(c) counts relating to the murders of Robinson and Withers. *Id.*; ECF 301, ¶ 20. And, the jury found that the drug quantities for cocaine and crack cocaine set out in 21 U.S.C. § 841(b)(1)(A) applied to both Moore and Babb. ECF 301, ¶ 20. Of relevance, those amounts, at the time, were five kilograms or more of powder cocaine and fifty grams or more of crack cocaine. *See* 21 U.S.C. § 841(b)(1)(A) (effective 11/02/2002 through 03/08/2006).

At Babb's sentencing, the government stated that it did not "know who pulled the trigger in this case." ECF 192-2 (Babb Sentencing Tr.), at 4. But, it speculated that "the jury or a couple of jurors . . . probably had an issue as to Mr. Babb's role in the actual murders." *Id.*[7]

---

[7] As indicated, the two bodies were in the trunk of a car driven by Moore, and Babb was not present when the police stopped the vehicle and found the bodies. Defendant's fingerprints were recovered from each of four plastic bags placed on the heads and feet of the two victims. ECF 301, ¶ 13. Additional fingerprints of Moore were recovered from a garbage bag found

Sentencing for Moore was held on July 24, 2007. *See* Docket. He was 43 years old at the time. ECF 301 at 2. According to the PSR, Count One and Count Two "grouped" under U.S.S.G. § 3D1.2(d). *Id.* ¶ 25. Under § 3D1.2(d), the offense level for the group corresponds to the higher of the offense levels for the offenses subject to grouping. *Id.*

Moore had a base offense level of 32 for Count One, the drug conspiracy count, pursuant to U.S.S.G. § 2D1.1(c)(4), based on a finding that his criminal activity involved over five kilograms of cocaine and over fifty grams of crack cocaine. *Id.* ¶ 26. And, he had a base offense level of twenty-four for Count Two (firearms conspiracy). *Id.* However, in determining the Guidelines range, the PSR applied the murder cross-reference provision, pursuant to U.S.S.G. §§ 2D1.1(d)(1), 2K2.1(c)(1), and 2A1.1(a), based on the murders of Withers and Robinson. *Id.* In particular, U.S.S.G. § 2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1." Therefore, the PSR reflected an adjusted base offense level of 43. ECF 301, ¶ 26.

The PSR also applied a two-level upward adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, based on Moore's materially false testimony during a motions hearing. *Id.* ¶ 29; *see also id.* ¶ 10 n.1. This resulted in a total offense level of 45 for Counts One and Two. *Id.* ¶¶ 30, 34.[8]

---

underneath the bodies, *id.*, and from a garbage bag in the trunk containing the victims' clothing. *Id.* ¶ 14.

[8] Of course, there were no deductions for acceptance of responsibility under U.S.S.G. § 3E1.1. In any event, under the Guidelines, 43 is the highest offense level. *See* U.S.S.G. Ch. 5, Part A, Application Note 2.

According to the PSR, Moore had ten prior adult convictions. *Id.* ¶¶ 40–49. In 1984, defendant pleaded guilty in the City Court of New Rochelle, New York to petty larceny, and was sentenced to conditional discharge. *Id.* ¶ 40. The same year, defendant was found guilty in the same court of attempted robbery and was sentenced to six months of imprisonment. *Id.* ¶ 41.

In 1986, defendant was found guilty in the Superior Court for Westchester County, New York of grand larceny, and was sentenced to 90 days of imprisonment, suspended, followed by a term of probation. *Id.* ¶ 42. In 1988, he appeared in court for a technical probation violation, at which time he was found in violation and sentenced to 90 days of imprisonment. *Id.* ¶ 42. Also in 1986, defendant was found guilty in the City Court of New Rochelle, New York of possession of a controlled substance. *Id.* ¶ 43. He was sentenced to 30 days of imprisonment. *Id.*

Three years later, in June 1989, defendant was found guilty in the District Court for Dallas County, Texas of a violation of the Controlled Substances Act, and was sentenced to two years of imprisonment. *Id.* ¶ 44. He was paroled in November of 1989. *Id.* The same year, he was found guilty in the New Rochelle City Court of third degree assault, and ordered to pay a $100 fine. *Id.* ¶ 45.

In 1990, defendant was found guilty in the Superior Court for Westchester County of attempted criminal sale of a controlled substance, for which he was sentenced to three to six years of imprisonment. *Id.* ¶ 46. In September 1992, defendant was temporarily released, whereupon he absconded. *Id.* He was returned to incarceration in November 1992. *Id.* He was paroled in 1993, but parole was revoked in 1994, and Moore was returned to imprisonment. *Id.* He was again paroled in 1995. *Id.*

In April 1994, defendant was found guilty in the New Rochelle City Court of criminal possession of a controlled substance, and sentenced to one year of imprisonment. *Id.* ¶ 47. He

was granted conditional release in December 1994. *Id.* He was found guilty in the New Rochelle City Court in 2000 of third degree assault, and granted a conditional discharge. *Id.* ¶ 48. Finally, in 2001, he was found guilty in Westchester County Court of criminal possession of a controlled substance. *Id.* A bench warrant was issued for defendant's arrest, and sentencing was still pending as of the PSR. *Id.*

These convictions yielded a criminal history score of 10 points. This equated to a criminal history category of V. *Id.* ¶ 50.

With a final offense level of 45 (reduced to the maximum of 43) for Counts One and Two, and a criminal history category of V, the Guidelines for Counts One and Two called for a sentence of life imprisonment. *Id.* ¶ 61. Further, the PSR specified that Count One carried a statutory, mandatory minimum term of ten years of imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A). *Id.* ¶ 56.

The PSR also noted that the penalties for Counts Three, Four, and Seven were set by statute. *Id.* ¶¶ 35–37. In particular, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), Count Three carried a mandatory minimum term of ten years' imprisonment, consecutive to any other sentence. *Id.* ¶ 58. Count Four carried a mandatory minimum term of imprisonment of 25 years, consecutive to any other sentence, pursuant to § 924(c)(1)(C)(i). *Id.* ¶ 59. And, Count Seven had a mandatory minimum term of 25 years, consecutive to any other count of conviction, pursuant to § 924(c)(1)(C)(i). *Id.* ¶ 60.

The PSR included the following text as to the "Government's version of the Sentencing Guidelines" with respect to the § 924(c) counts, *id.* ¶ 19: "Pursuant to 18 U.S.C. § 924(c)(1)(A)(iii) Moore should receive a consecutive ten year sentence for the violations of 18 U.S.C. Section 924(c) in counts three and four (which occurred at the same time) and a consecutive 25 year

sentence for his conviction for violation of Section 924(c) in Count 7. *See* 18 U.S.C. § 924(c)(1)(C)." In other words, the government took the position that Counts Three, Four, and Seven required a total consecutive sentence of 35 years of imprisonment, rather than 60 years.

I pause to note that, at the time, 18 U.S.C. § 924(c)(1)(C)(i) provided for a mandatory minimum sentence of 25 years of imprisonment for any "second or subsequent" § 924(c) offense, even if the convictions were not yet final and were within the same indictment. This procedure is known as "stacking." The 2018 FSA, Pub. L. No. 115-391, § 403(a), 132 Stat. at 5221–22, amended this provision to apply only to prior final convictions. This change in the law was part of the reason the Court previously reduced Moore's sentence. *See* ECF 302 at 43.

At sentencing on July 24, 2007, Judge Davis adopted the factual findings and the Guidelines in the PSR, without change, including as to the murder cross-reference and the two-level upward adjustment for obstruction of justice. ECF 333 (Statement of Reasons), at 1.[9] As noted, this resulted in a total offense level of 45, a criminal history category of V, and a Guidelines range of life imprisonment. *Id*. However, the maximum offense level under the Guidelines is 43. *See* U.S.S.G. Ch. 5, Part A, Application Note 2.

Judge Davis sentenced Moore to life in prison as to Count One; twenty years of imprisonment (240 months) as to Count Two, concurrent with Count One; ten years of imprisonment (120 months) as to Count Three, consecutive to Count One; ten years of imprisonment (120 months) as to Count Four, "concurrently" to the sentence in Count Three; and twenty-five years of imprisonment (300 months) as to Count Seven, consecutive to Counts One

---

[9] I could not locate the Statement of Reasons on the docket. But, a copy was contained in Judge Davis's Chambers file. I submitted it for docketing in January 2025. *See* ECF 333.

and Three, for a total term of "Life plus 35 years." ECF 142 (Judgment), at 2.[10]  Bureau of Prisons

("BOP") records reflect that Moore received credit for his time in pretrial custody from November

6, 2003, to July 23, 2007.  *See* ECF 296-1 at 4.[11]

---

[10] As I noted in my Memorandum Opinion of July 19, 2022 (ECF 302), there was a "divergence between the mandatory minimum sentences for Moore, as outlined in the PSR (*see* ECF 301, ¶¶ 56-60), and Judge Davis's sentence." *Id.* at 11 n.10. I explained, *id.*: "As indicated, the PSR provides that Count Three had a mandatory minimum term of 10 years of imprisonment, consecutive to all other counts; Court [sic] Four had a mandatory minimum term of 25 years, consecutive; and Count Seven also required a minimum of 25 years, consecutive. *Id.* This would result in a 60-year mandatory minimum sentence for the three § 924(c) offenses. *Cf. United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005) (noting that 'the statute mandates that each sentence for convictions under § 924(c) must be imposed consecutively,' and that, at the time, each 'additional conviction[ ] under § 924(c) require[s] statutory minimum sentences of 25 years to run consecutively to each other')." I added, *id.* at 12 n.10: "But, Judge Davis sentenced Moore to 10 years of imprisonment for Count Three, and 10 years for Count Four, 'concurrent' to the 10-year sentence for Count Three, followed by a 25-year consecutive sentence for Count Seven. ECF 142 at 2. This resulted in a total sentence of 35 years, consecutive, for the three § 924(c) convictions. *Id.*"

Further, I observed, ECF 302 at 12 n.10: "The record does not appear to contain a contemporaneous explanation for the discrepancy. . . . But, as noted, the PSR reflects that the government believed concurrent 10-year terms were appropriate for Counts Three and Four because the two murders occurred at the same time. ECF 301, ¶ 19. And, when Moore challenged his consecutive § 924(c) sentences on 'double jeopardy' grounds in his § 2255 Petition, the government stated in its briefing, ECF 192 at 62-63: 'Though each victim's murder was a separate use of a firearm and the sentences for those counts probably should have been consecutive, Judge Davis exercised his discretion in favor of Moore and imposed concurrent 120 month sentences for those counts, perhaps because the evidence suggested they were committed at the same time.'" And, given Moore's life sentence, I noted that, "[t]hus far, this issue has been largely academic . . . ." ECF 302 at 12 n.10.

[11] Babb was sentenced to life imprisonment as to Count One; 20 years of imprisonment as to Count Two, concurrent with Count One; and 60 months of imprisonment as to Count Seven, consecutive, for a total term of life imprisonment plus five years. ECF 143. By Memorandum Opinion (ECF 275) and Order (ECF 276) of June 4, 2021, I granted in part Babb's motion for compassionate release, as well as his motion under Section 404 of the First Step Act, and reduced his total sentence to 30 years of imprisonment. Dissatisfied with that ruling, Babb filed a motion for reconsideration (ECF 306), which I denied by Memorandum Opinion (ECF 330) and Order (ECF 331) of October 24, 2024.

Moore's conviction and sentence were affirmed on direct appeal.  ECF 178; *see United States v. Babb*, 369 Fed. App'x 503 (4th Cir. 2010).  His petition for certiorari to the Supreme Court was denied on October 4, 2010.  *United States v. Babb*, 562 U.S. 878 (2010).

Thereafter, Moore moved for post-conviction relief under 28 U.S.C. § 2255, raising numerous contentions.  *See* ECF 182.  I denied his motion by Memorandum Opinion and Order of April 10, 2012.  ECF 197; ECF 198.  The Fourth Circuit denied a Certificate of Appealability and dismissed the appeal.  ECF 211; *see United States v. Moore*, 514 Fed. App'x 340 (4th Cir. 2013) (per curiam).

As noted, in June 2021 Moore moved for compassionate release.  ECF 277.  Through counsel, the motion was supplemented.  ECF 285, ECF 299, ECF 300.  By Memorandum Opinion (ECF 302) and Order (ECF 303) of July 19, 2022, I granted the motion, in part.  In particular, I determined that defendant established an extraordinary and compelling reason for compassionate release based on a combination of certain medical conditions from which he was suffering, the COVID-19 pandemic, and intervening changes in sentencing law.  ECF 302 at 31–34.  As to the sentencing factors in 18 U.S.C. § 3553(a), I stated, *inter alia*, ECF 302 at 43 (emphasis added): "Given the gravity of Moore's offense, including the murder cross-reference, his criminal history, and his disciplinary infractions while incarcerated, immediate release is wholly unwarranted. However, considering the length of defendant's sentence, as well as his rehabilitative efforts and his medical conditions, as well as the impact of the First Step Act's 'stacking' reforms, *and the change in the law as to drug quantities for cocaine base*, I am of the view that a reduction in Moore's sentence is appropriate."

As mentioned, at the time of Moore's sentencing, a defendant could be sentenced for a § 924(c) offense, even if the conviction was not yet final.  And, § 924(c) provided for multiple

sentences within the same indictment, known as "stacking." This would result in a consecutive sentence for the first § 924(c) offense and a mandatory minimum penalty of twenty-five years, consecutive, for each subsequent § 924(c) offense. *See United States v. Jordan*, 952 F.3d 160, 165 (4th Cir. 2020). But, as indicated, Judge Davis treated two of defendant's § 924(c) convictions as one event, *i.e.*, Counts Three and Four. *See* ECF 142. So, defendant did not receive a consecutive sentence for Count Four.

With the First Step Act's change in the law regarding 18 U.S.C. § 924(c), the government previously claimed that the § 924(c) mandatory minimum sentences for Moore would now total 25 years: ten years for Counts Three and Four and five years for Count Seven, all consecutive. ECF 302 at 36; ECF 296 at 16–17. But, pursuant to 21 U.S.C. § 841(b)(1)(A), the ten year mandatory minimum term for Count One remains unchanged. And, for Count One, Judge Davis sentenced Moore to the Guidelines sentence of life imprisonment, which was calculated based on the murder cross-reference.

In ECF 302, ECF 303, and ECF 304, I reduced Moore's sentence for Count One from life imprisonment to twenty-five years (300 months) of imprisonment. *See* ECF 304 (Amended Judgment). I also reduced his sentence for Count Seven from twenty-five years (300 months) to five years (60 months), consecutive to all other sentences. ECF 303; ECF 304. And, I left unchanged Moore's 20-year (240-month) sentence for Count Two, concurrent with Count One, as well as his 10-year (120-month) sentences for Counts Three and Four, concurrent to each other but consecutive to all other sentences. ECF 303; ECF 304.

In sum, I reduced defendant's total sentence from life imprisonment plus 35 years to a total of 40 years (480 months) of imprisonment. ECF 303; ECF 304. Dissatisfied with that result,

Moore moved a few months later for a sentence reduction under Section 404 of the 2018 FSA. *See* ECF 311.

## II.  The Fair Sentencing Act of 2010 and the First Step Act of 2018

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010); *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  Indeed, "[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'"  *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (citation omitted).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).

One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.  And, modification is permitted for a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ."  18 U.S.C. § 3582(c)(2); *see United States v. Collington*, 995 F.3d 347, 353 (4th Cir. 2021) (noting that "§ 3582(c)(2) permits defendants to move for a reduced sentence based on retroactive amendments to the Guidelines"),

*abrogated on other grounds by Concepcion v. United States*, 597 U.S. 488 (2022); *United States v. Smalls*, 720 F.3d 193, 195–96 (4th Cir. 2013).

In December 2018, Congress enacted the First Step Act of 2018. *See United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). Section 404 of the 2018 FSA expressly "makes retroactive certain provisions of the Fair Sentencing Act of 2010 . . . ." *Jackson*, 952 F.3d at 495; *see Concepcion*, 597 U.S. at 488; *United States v. Lancaster*, 997 F.3d 171, 173 (4th Cir. 2021); *Collington*, 995 F.3d at 352; *Chambers*, 956 F.3d at 669–70; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 177–180 (4th Cir. 2019); *United States v. Venable*, 943 F.3d 187, 188–89 (4th Cir. 2019). In particular, the 2018 FSA authorizes the modification of a previously imposed sentence for a defendant affected by the statutory changes to the penalty ranges for crack cocaine offenses, as set forth in the 2010 FSA. *See, e.g.*, *Jackson*, 952 F.3d at 495; *see United States v. Foster*, 2022 WL 2826184, at *1 (4th Cir. July 20, 2022) (per curiam); *United States v. McDonald*, 986 F.3d 402, 408–09 (4th Cir. 2021).

The 2010 FSA, which took effect on August 3, 2010, "reduced the statutory penalties for cocaine base offenses" in order to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016); *see Concepcion*, 597 U.S. at 487–88 (noting that the 2010 FSA was passed "to correct the harsh disparities between crack and powder cocaine sentencing"); *United States v. Smith*, 75 F.4th 459, 463 (4th Cir. 2023) (explaining that the 2010 FSA "modified the disproportionate sentences for crack cocaine offenses."); *Collington*, 995 F.3d at 351 (noting that the 2010 FSA "reduced sentencing disparities between cocaine and crack cocaine offenses, which were widely criticized for producing racially disproportionate sentencing outcomes"); *see also Wirsing*, 943 F.3d at 177–78. In particular, the statute increased the threshold quantities needed to trigger the mandatory sentencing ranges

associated with cocaine base offenses under 21 U.S.C. § 841(b)(1)(A) and (B). *See Dorsey v. United States*, 567 U.S. 260, 269 (2012); *United States v. Reed*, 58 F.4th 816, 818 (4th Cir. 2023); *Gravatt*, 953 F.3d at 260. As a result, the crack-to-powder cocaine disparity was reduced from 100-to-1 to 18-to-1. *See Dorsey*, 567 U.S. at 264; *Reed*, 58 F.4th at 818; *Gravatt*, 953 F.3d at 260; *Peters*, 843 F.3d at 575; *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013), *cert. denied*, 572 U.S. 1071 (2014).

Under Section 2 of the 2010 FSA, the sentencing range for possession with intent to distribute less than twenty-eight grams of cocaine base carries a maximum sentence of twenty years of imprisonment. And, the quantity of cocaine base required to trigger the mandatory sentencing range of five to forty years was increased from five grams to twenty-eight grams. Additionally, the quantity of cocaine base required to trigger the mandatory sentencing range of ten years to life imprisonment was increased from fifty grams to 280 grams. Section 3 of the 2010 FSA, which is not at issue here, eliminated the mandatory minimum sentence for simple possession.

Thereafter, the Sentencing Commission amended the Guidelines to conform to the 2010 FSA. *Gravatt*, 953 F.3d at 260. However, the 2010 FSA did "not apply its changes retroactively," so as to "alter statutory minimum terms of imprisonment" that were previously in effect. *Id.* With the enactment in 2018 of the First Step Act, Congress rectified the inequity. *Id.*

Section 404(b) of the 2018 FSA "made the Fair Sentencing Act sentence reductions retroactive . . . by authorizing district courts to impose a reduced sentence on specified 'covered offenses' as if the Fair Sentencing Act were in effect at the time the offenses were committed." *Lancaster*, 997 F.3d at 173; *see also Terry v. United States*, 593 U.S. 486, 491–92 (2021); *United States v. Richardson*, 96 F.4th 659, 665 (4th Cir. 2024); *United States v. Thomas*, 32 F.4th 420,

423–26 (4th Cir. 2022); *Foster*, 2022 WL 2826184, at *1. In other words, under § 404 of the 2018

FSA, the provisions of the 2010 FSA apply retroactively to a defendant who was sentenced prior

to August 3, 2010, *i.e.*, the effective date of the 2010 FSA. *United States v. Charles*, 932 F.3d 153,

162 (4th Cir. 2019).

Section 404 of the 2018 FSA, 132 Stat. at 5222, provides:

**SEC. 404. Application of Fair Sentencing Act.**

(a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

The procedural framework that applies to a motion under § 404 is found in 18 U.S.C.

§ 3582(c)(1)(B). *See Collington*, 995 F.3d at 353 ("We have held that section 404 motions are

brought under § 3582(c)(1)(B)"); *Wirsing*, 943 F.3d at 183 (concluding that § 3582(c)(1)(B) is

"the appropriate vehicle" for a 2018 FSA motion). Therefore, an eligible defendant may seek to

reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B).

"In resolving a motion under the First Step Act, a district court's discretion is broad and its

burden light." *United States v. Troy*, 64 F.4th 177, 184 (4th Cir.), *cert. denied*, ___ U.S. ___, 144

S. Ct. 167 (2023). "District courts are not required to modify a sentence 'for any reason' and may reject arguments they consider unconvincing in 'a brief statement of reasons' and 'without a detailed explanation.'" *Id.* (quoting *Concepcion*, 597 U.S. at 496, 501).

In *Lancaster*, 997 F.3d 171, the Fourth Circuit clarified how a district court should proceed when presented with a motion to reduce a sentence under § 404 of the 2018 FSA. Initially, the court must determine whether the sentence is "'eligible' for consideration 'on the merits.'" *Id.* at 174 (quoting *Gravatt*, 953 F.3d at 262). The sentence will be eligible for consideration if it is for a "covered offense"; the motion is addressed to the court that imposed the subject sentence; and the sentence has not "been 'previously imposed or previously reduced' under the Fair Sentencing Act." *Lancaster*, 997 F.3d at 174–75.

The 2018 FSA "defines a 'covered offense' as a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Gravatt*, 953 F.3d at 260. Upon "determining that a sentence qualifies for review on the merits, the court is then given discretion to impose a reduced sentence as if the Fair Sentencing Act [of 2010] were in effect at the time the covered offense was committed." *Lancaster*, 997 F.3d at 175. In doing so, the court must consider the factors set forth in 18 U.S.C. § 3553(a) as well as any nonfrivolous arguments raised by the parties. *United States v. Henderson*, 2024 WL 4144399, at *1 (4th Cir. Sept. 11, 2024); *United States v. Kinard*, 2024 WL 2746970, at *2 (4th Cir. May 29, 2024); *United States v. Swain*, 49 F.4th 398, 400 (4th Cir. 2022).

"When exercising their discretion to reduce a sentence under the First Step Act, district courts must calculate the Guidelines range 'as if the Fair Sentencing Act's amendments had been in place at the time of the offense.'" *Smith*, 75 F.4th at 465 (quoting *Concepcion*, 597 U.S. at 498

n.6). As the Supreme Court explained in *Concepcion*, 597 U.S. at 498 n.6: "A district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act." Notably, "[t]hat Guidelines range 'anchor[s]' the sentencing proceeding." *Id.* (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)). But, "[t]he district court may then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark." *Concepcion*, 597 U.S. at 498 n.6.

In other words, once the benchmark Guidelines range is calculated, the 2018 FSA "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence . . . ." *Id.* at 500. Indeed, a district court is "require[d]" to consider any nonfrivolous argument raised by the parties. *Id.* at 502. Examples given in *Concepcion* include "evidence of rehabilitation or other changes in law," "postsentencing evidence of violence or prison infractions," and "nonretroactive Guidelines amendments." *Id.* at 499, 502. District courts are afforded wide deference in performing this analysis; "[a]ll that is required is for a district court to demonstrate that it has considered the arguments before it." *Id.* at 502.

In *Troy*, 64 F.4th at 184, the Fourth Circuit summarized the two-step process articulated by the Supreme Court in *Concepcion*, stating: "*Concepcion* instructs district courts exercising their discretion under the [2018 FSA] to proceed in two steps. First, they must recalculate the movant's Guidelines range 'only to the extent it adjusts for the Fair Sentencing Act.' Second, they may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence." (Citations omitted); *see also United States v. Degout*, 2024 WL 4625075, at *4 (4th Cir. Oct. 30, 2024) (articulating the same two-step process); *Smith*, 75 F.4th at 465 (same). "Thus, while a district court may consider other changes in the law when

determining what reduction, if any, is appropriate in an individual case, the proper 'benchmark' for the district court's analysis . . . is the impact of the Fair Sentencing Act on the defendant's Guidelines range." *Troy*, 64 F.4th at 184 (quoting *Concepcion*, 597 U.S. at 498 n.6). "Any other factual and legal changes affecting the Guidelines range are examined after this benchmark calculation." *Smith*, 75 F.4th at 465.

To recalculate the Guidelines range, the Fourth Circuit has recognized that the district court "may need to make additional findings and identify the attributable drug quantity with more precision than at the original sentencing." *Foster*, 2022 WL 2826184, at *1; *see Lancaster*, 997 F.3d at 176. The findings must be supported by the record. *Peters*, 843 F.3d at 578. Although the court may adopt the findings in the PSR as to the factual basis, it may do so only if "'it clearly resolved any factual disputes.'" *Foster*, 2022 WL 2826184, at *1 (quoting *United States v. Burnley*, 988 F.3d 184, 190 (4th Cir. 2021) (cleaned up)).

Of relevance here, "when a court exercises discretion to reduce a sentence, the imposition of the reduced sentence must be procedurally and substantively reasonable." *Collington*, 995 F.3d at 358. Procedural reasonableness does not "require the district court to hold a resentencing hearing." *Id.* at 360. But, the district court "must 'consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, [and] determine— following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those facts, and adequately explain that decision.'" *Troy*, 64 F.4th at 185 (quoting *Collington*, 995 F.3d at 360); *see also Reed*, 58 F.4th at 820 (explaining that a district court commits a procedural error by "'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—

24

including an explanation for any deviation from the Guidelines range.'") (citation omitted). And, "[a] sentence is substantively unreasonable if it is longer than necessary to serve the purposes of sentencing." *United States v. Fowler*, 948 F.3d 663, 668 (4th Cir. 2020).

### III. Discussion

### A. Eligibility

Moore contends that he is eligible for a sentence reduction as to Count One, pursuant to Section 404 of the 2018 FSA, because his conviction for Count One included conspiracy to distribute fifty grams or more of crack cocaine, and the threshold quantities needed to trigger mandatory sentencing ranges for crack cocaine were reduced by the 2010 FSA. ECF 311 at 4. The government agrees that under *Gravatt*, 953 F.3d at 264, a defendant convicted of a drug conspiracy involving both powder cocaine and cocaine base is eligible for relief. ECF 324 at 9. Nevertheless, the government urges the Court, in its discretion, to deny the Motion. *Id.*

As noted, Section 404 of the 2018 FSA makes the provisions of the 2010 FSA available to a defendant who was sentenced before August 3, 2010, for a "covered offense." Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3" of the 2010 FSA. 2018 FSA, § 404(a). The 2018 FSA also requires a defendant to direct his motion to the court that originally sentenced him. *Id.* § 404(b).

Moore was sentenced on July 24, 2007, well before August 2010. *See* Docket, July 24, 2007. And, Count One charged conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 846. Thus, it qualifies as a "covered offense." Specifically, Section 2 of the 2010 FSA modified penalties for crack cocaine offenses by increasing the threshold drug quantities required to trigger the mandatory minimum sentences under 21 U.S.C. § 841(b).

To be sure, the 2010 FSA did not amend the penalties in 21 U.S.C. § 841(b)(1)(A)(ii) regarding powder cocaine. But, the Fourth Circuit has made clear that a conspiracy involving 50 grams or more of crack cocaine and another drug, as in this case, still qualifies as a "covered offense" under § 404 of the First Step Act, even though the penalties for the second drug were not modified by the 2010 FSA. *See Gravatt*, 953 F.3d at 264 (concluding that the defendant was convicted of a "covered offense", even though he was convicted of conspiring to distribute both powder and crack cocaine); *United States v. Mosley*, DKC-03-194-1, 2023 WL 5176112, at *2 (D. Md. Aug. 11, 2023) (noting that the Fourth Circuit held in *Gravatt* "that a defendant remains eligible under the [First Step] Act even if the conspiracy for which he was convicted encompassed distribution of both cocaine powder and crack cocaine."). As noted, the government "acknowledges that *Gravatt* is controlling" on the issue of Moore's eligibility. ECF 324 at 9.

Even if a sentence involves a covered offense, "Section 404(c) contains two express limitations on the application of Section 404(b)." *Gravatt*, 953 F.3d at 260. Section 404(c) states: "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." 2018 FSA, § 404(c); *see Concepcion*, 597 U.S. at 496 ("The only two limitations on district courts' discretion appear in § 404(c): A district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court considered and rejected a motion under the First Step Act.").

Moore did not previously file a motion under Section 404 of the First Step Act. But, the Court identified legal issues under that statute and, arguably, his sentence was "previously reduced

in accordance with the amendments made by section[] 2 . . . of the Fair Sentencing Act of 2010 . . . ." 2018 FSA, § 404(c).

In reducing Moore's sentence from life imprisonment plus thirty-five years to a total of forty years, I expressly considered Section 404 of the First Step Act, although I noted that it had not been raised by either party. I said, ECF 302 at 42 n.18: "Although no Section 404 motion was filed, the Court is certainly aware of the change in the law pertaining to crack cocaine." Further, I stated, *id.* at 43 (emphasis added): "[C]onsidering the length of defendant's sentence, as well as his rehabilitative efforts and his medical conditions, as well as . . . *the change in the law as to drug quantities for cocaine base*, I am of the view that a reduction in Moore's sentence is appropriate."

The government asserts here that the Court "has already considered the impact of Section 404 of the First Step Act on Petitioner's sentence . . . ." ECF 324 at 10. But, the government advances this argument only in the context of asking the Court to deny the Motion as a matter of "discretion," and not with respect to Moore's eligibility for relief. *Id.* at 11.

To my knowledge, every circuit that has considered whether the limitations in Section 404(c) are jurisdictional has concluded that they are not. *United States v. Naranjo*, 102 F.4th 280, 286 (5th Cir. 2024) ("We thus hold that Section 404(c) is a mandatory claim-processing rule, not a jurisdictional bar . . . ."); *United States v. Deruise*, 2023 WL 3668929, at *4 (11th Cir. May 26, 2023) ("Because we see no clear statement from Congress indicating that § 404(c)'s bar on successive motions is jurisdictional, we hold that it sets forth a mandatory claim-processing rule."); *United States v. Hart*, 983 F.3d 638, 641 (3d Cir. 2020) ("We hold that § 404(c) is not jurisdictional."). The government does not dispute Moore's eligibility for relief under § 404. Therefore, I shall assume, *arguendo*, that the limitations in § 404(c) do not apply here, and thus Moore is eligible for relief under the 2018 FSA.

27

## B.  Discretionary Reduction

Although I have determined that Moore is eligible for relief under the 2018 FSA, that does not end the inquiry.  *Id.* § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *see Concepcion*, 597 U.S. at 496 ("[A] district court is not required to modify a sentence for any reason."); *Gravatt*, 953 F.3d at 262 (noting that simply because a defendant is eligible for relief under the First Step Act "does not mean that the defendant is entitled to relief"); *Venable*, 943 F.3d at 194 n.10 (district courts have discretion to deny relief).

According to Moore, the Motion is about him "being sentenced under a statute that Congress and Courts all over the country have found to disproportionately [a]ffect African Americans with overly harsh sentences that are not needed."  ECF 325 at 7.  Moore argues that, if he were to be sentenced today, the sentence for Count One "would be lower than the current term."  ECF 311 at 5.  In particular, Moore asserts that the mandatory minimum for Count One "would no longer be 10 years but rather 5 years . . . ."  *Id.* at 9.  And, in Moore's view, the offense level for Count One would be "26."  *Id.*  According to Moore, with an offense level of 26 and a criminal history category of "IV," his Guidelines range would be "92–115 months of imprisonment" which is "far less than the current 300-month term imposed."  *Id.*  Moore acknowledges that the Court was "aware" of the change in the law regarding cocaine base penalties when previously reducing his sentence.  ECF 325 at 6.  But, he argues that the Court "did not actually go into a guideline analysis as to the covered offense at issue here."  *Id.*

Defendant also takes issue with the length of his sentence in light of current sentencing practices in this District and country.  He argues, ECF 311 at 13: "Today, judges in this District commonly impose sentences for actual murder convictions that are . . . less than what Mr. Moore

is currently sentenced to . . . ."  In support of his contentions, Moore cites data compiled by the Sentencing Commission and numerous cases from this District.  *Id.* at 14–15.  He does not point out that this case involves two murders.

Moore states that he "does not seek to justify, diminish, or detract from the seriousness of his offenses" and "unequivocally accepts responsibility for his criminal conduct."  *Id.* at 4.  But, he urges the Court to consider his "age at the time of his crime" and submits that "he is no longer the man who made irrational and irresponsible choices to engage in criminal conduct . . . ."  *Id.* at 10–11.  Defendant also maintains that "he has demonstrated that he is no longer a threat to public safety."  *Id.* at 10.

Defendant posits, *id.* at 3: "Despite having no realistic hope of ever being released from prison, [he] has done everything in his power to rehabilitate himself as demonstrated by his genuinely exceptional accomplishments and meritorious prison record."  According to defendant, he "has used his over 16 years in prison to become a better person and improve his life."  *Id.* at 9.  In particular, defendant asserts that he "has excelled at work assignments" and completed numerous rehabilitative programs, including suicide prevention programs where he "helps other prisoners in need . . . ."  *Id.* at 9.  Although Moore acknowledges that there have been "some bumps in the road," he argues that they "should not be used to keep [him] in prison for the rest of his life."  *Id.* at 10.

Defendant also states, *id.* at 11: "This Court is not faced with a stark choice between simply turning Moore loose, or continuing his incarceration.  The Court has the option of reducing Moore's period of incarceration, followed by a term of supervised release."  According to defendant, *id.* at 12: "Beyond the low risk that Moore now presents, whatever risk there is can be further mitigated by supervised release."

The government observes that, "[l]ess than 6 months" after the Court substantially reduced Moore's life sentence, he filed the Motion, yet he "raises no new grounds that would justify an additional sentence reduction." ECF 324 at 10. It states, *id.*: "[T]his Court already considered the impact of Section 404 of the First Step Act on [Moore's] sentence, [Moore's] record of rehabilitation, and the changes in the sentencing landscape with regard to murder . . . ." Because defendant "has not articulated any basis for a further reduction of sentence", the government asserts that the Court should deny the Motion. *Id.* at 11.

Further, the government maintains that, despite defendant's eligibility under Section 404, he "still faces an applicable [G]uidelines range of life imprisonment pursuant to U.S.S.G. § 2A1.1 for his Count One conviction and a statutory sentencing range of 10 years to life on that count because his offense involved 5 kilograms of powder cocaine." *Id.* "In other words, even adjusting the applicable sentencing ranges to fit today's framework, Petitioner still faces an applicable guidelines range of life imprisonment for his Count One conviction and a statutory maximum of life, followed by a minimum total consecutive sentence of 25 years for his three § 924(c) convictions—two of which charged Petitioner with discharging a firearm and one of which charged him with possessing a firearm." *Id.* For these reasons, the government argues, *id.*: "[T]he current statutory and applicable guidelines range do not support a further reduction of sentence."

The government also argues, *id.* at 12: "Petitioner's reduced 40-year sentence is not out of step with current sentencing practices." For example, the government cites *United States v. Whisonant, et al.*, ELH-17-191, a case involving, *inter alia*, convictions for drug trafficking and discharging a firearm resulting in death, in which one defendant received a forty year sentence even though he pleaded guilty and there was only one murder victim. ECF 324 at 12. In contrast, the government observes that Moore did not plead guilty and two people were murdered. *Id.*

Moreover, the government argues that the sentencing factors in 18 U.S.C. § 3553(a) weigh against a further reduction of Moore's sentence. *Id.* at 13. As the government puts it, Moore "committed two cold-blooded, execution-style murders in order to maximize his profits from a drug transaction" and "took elaborate steps to destroy evidence of the killings and conceal his involvement." *Id.* at 14.

According to the government, the evidence "connecting" defendant to the murders "was overwhelming . . . ." *Id.* at 12. It points to the following evidence, among other things, *id.* at 2–3: the bodies of Withers and Robinson were found in the trunk of a car that Moore was driving; Moore's fingerprints were recovered from the "four plastic bags placed on the heads and feet of each victim"; a shirt that Moore owned and a five-dollar bill in his possession had blood stains matching the DNA of Robinson; and "22 of Petitioner's fingerprints and palm prints were recovered from another garbage bag that was found inside the trunk, underneath the bodies." Moreover, the government emphasizes that, beyond the two murders, Moore "played a significant role in a large-scale cocaine and cocaine-base trafficking scheme, personally overseeing at least one multi-kilogram cocaine transaction involving over $100,000 worth of cocaine." *Id.* at 12. The government also points to defendant's prior convictions and the fact that he has received "11" disciplinary infractions while in BOP custody. *Id.* at 14–15. In its view, defendant has a history of "dangerous and violent behavior." *Id.* at 15.

### 1. Guidelines Range and Mandatory Minimum for Count One

As noted, Moore complains that, as to Count One, if he were sentenced today, "the mandatory minimum would no longer be 10 years but rather 5 years . . . ." ECF 311 at 9. He also states that with an offense level of "26" and a criminal history category of "IV", the Guidelines

range for Count One "would be 92–115 months of imprisonment", which is "far less than the current 300-month term imposed." *Id.*

According to the government, ECF 324 at 11: " . . . Petitioner still faces an applicable [G]uidelines range of life imprisonment pursuant to U.S.S.G. § 2A1.1 for his Count One conviction and a statutory sentencing range of 10 years to life on that count because his offense also involved 5 kilograms of powder cocaine."

The government is correct.  There is no change to Moore's Guidelines range or to the statutory mandatory minimum for Count One.

Notably, Moore's Guidelines as to Count One (life imprisonment) remain unchanged because of the applicability of the murder-cross reference.  *See* U.S.S.G. §§ 2D1.1(d)(1), 2K2.1(c)(1), and 2A1.1(a).  As explained, the cross reference in U.S.S.G. § 2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline."  Judge Davis applied the first-degree murder cross reference in § 2A1.1, which provides for a base offense level of 43.  Moore was also subject to a two-level upward adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, based on his false testimony at a motions hearing.  Thus, his total offense level would remain at 45 (reduced to the maximum of 43).

The PSR indicates that Moore had a criminal history category of "V."  ECF 301, ¶ 50.  In the Motion, Moore calculates his Guidelines range using a criminal history category of "IV."  *See* ECF 311 at 9.  He does not explain why he uses that metric or even appear to recognize that the

PSR determined that he had a criminal history category of V.  Upon review of the PSR, I conclude

that Moore was properly determined to have a criminal history category of V.

In particular, Moore received three points for his 1989 conviction for violating the Texas

Controlled Substance Act, for which he received a two-year sentence of imprisonment.  ECF 301,

¶ 44; U.S.S.G. § 4A1.1(a) (2007 version).  He also received three points for his 1990 conviction

for attempted criminal sale of a controlled substance, for which he was sentenced to three to six

years of imprisonment.  ECF 301, ¶ 46; U.S.S.G. § 4A1.1(a) (2007 version).  Moore received two

points for his 1994 conviction for criminal possession of a controlled substance, for which he was

sentenced to one year of imprisonment.  ECF 301, ¶ 47; U.S.S.G. § 4A1.1(b) (2007 version).  And,

he received one point for his third-degree assault conviction in 2000, for which he received a

conditional discharge.  ECF 301, ¶ 48; U.S.S.G. § 4A1.1(c) (2007 version); *see also* U.S.S.G. §

4A1.2(a)(3) (2007 version).  Defendant also received one point for his 2001 conviction for criminal

possession of a controlled substance, for which sentencing was pending at the time the PSR was

drafted.  ECF 301, ¶ 49; U.S.S.G. § 4A1.1(c) (2007 version); *see also* U.S.S.G. § 4A1.2(a)(4)

(2007 version).  These points add up to ten, which equates to a criminal history category of V.

U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (2007 version).  I see no error in the PSR.[12]

Accordingly, Moore's Guidelines range today for Count One would be precisely what it

was in 2007: a total offense level of 45 (reduced to the maximum of 43) and a criminal history

category of IV or V, yield a Guidelines range of life imprisonment.  This Guidelines range

constitutes the initial "benchmark" that "'anchor[s]'" this proceeding.  *Concepcion*, 597 U.S. at

---

[12] Whether defendant had a criminal history category of IV or V is of no moment.
Regardless, his Guidelines for Count One call for a sentence of life.

498 n.6 (citation omitted). If Moore were sentenced today, no intervening change in the law would affect his Guidelines range for Count One.

As to Moore's Count One mandatory minimum argument, he is correct that, in light of the 2010 FSA, a defendant convicted of conspiring to distribute at least 28 grams, but less than 280 grams, of crack cocaine faces a five-year mandatory minimum period of incarceration, rather than the ten-year mandatory minimum that applied when Moore was sentenced in 2007. *See* 21 U.S.C. § 841. Had crack cocaine been the only substance involved in the conspiracy charged in Count One, then Moore's argument would have merit. But, Moore was also convicted in Count One of conspiracy to distribute and possession with intent to distribute five kilograms or more of powder cocaine. The mandatory minimum for that offense remains ten years. 21 U.S.C. § 841(b)(1)(A).

In sum, the statutory minimum has been reduced as to the crack cocaine that is part of Count One. But, the change has no real significance, because defendant's Guidelines range and the mandatory minimum as to Count One are unaffected by the 2010 FSA. Moreover, I previously considered the change in the law as to 18 U.S.C. § 924(c). There is no intervening case law or other change in sentencing law that would affect Moore's sentence.

I pause to note that Moore seems to misapprehend the Court's earlier restructuring of his sentences. In order to arrive at a total sentence of forty years, I allocated certain terms of incarceration to certain counts. *See* ECF 302 at 45 & n.19. As the Supreme Court explained in *Pepper v. United States*, 562 U.S. 476, 507 (2011): "'A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent.'" (Citation omitted); *see Dean v. United States*, 581 U.S. 62, 67 (2017) (noting that the sentencing factors in § 3553(a) "are used to set both the length of separate prison terms and an aggregate prison term comprising separate sentences for multiple counts of conviction."); *Richardson*, 96 F.4th at 665 (explaining that a

34

district court applies a "holistic approach" when fashioning a sentence and that "sentencing on multiple counts is an 'inherently interrelated, interconnected, and holistic process.'") (citation omitted).

In short, defendant's criticism of 300 months for Count One is misguided. If I imposed a lower sentence for Count One, I would have imposed a greater sentence for other counts, to arrive at a reasonable sentence of forty years of incarceration.

### 2. 3553(a) Factors

As noted, a district court "must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) in section 404 proceedings." *Swain*, 49 F.4th at 400; *see Henderson*, 2024 WL 4144399, at *1; *Kinard*, 2024 WL 2746970, at *2. The applicable factors in § 3553(a) include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

There is no doubt that defendant's crimes were extraordinarily serious. As I explained in my Memorandum Opinion of July 2022, Moore "was involved in a large-scale drug trafficking conspiracy that distributed significant quantities of cocaine and crack cocaine. And, beyond that very serious crime, he was involved in the brutal shooting and murder of two people, apparently for monetary gain." ECF 302 at 35. Although the government stated at Babb's sentencing that it did not know who pulled the trigger in this case (ECF 192-2 at 4), that does not exonerate Moore. Significantly, the jury instructions for Counts Three and Four charged the jury with determining whether Moore "did knowingly use, carry, and discharge a firearm against" Robinson and Withers,

respectively, "during and in relation to a drug trafficking crime . . . as set forth in Count One . . . ." ECF 131 at 36–38. The jury answered those questions in the affirmative.

Moore asks the Court to consider his age at the time he committed his crimes. ECF 311 at 10. But, Moore was approximately 39 years of age. He was not a mere child or young adult; he was a grown man. If anything, Moore's age at the time of his crimes is a factor that weighs against reducing his sentence.

That said, Moore is now around 60 years of age. "Recent analysis from the Bureau of Justice Statistics considering the recidivism rates of released prisoners in 30 states (including [Maryland]) from 2005 to 2010 supported the Commission's conclusion, finding decreased recidivism rates as prisoners age.[ ]" *United States v. Payton*, 754 F.3d 375, 377 (6th Cir. 2014) (emphasis added) (citing United States Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010* at 12 (April 2014)), https://perma.cc/ZE9K-QD9U; *see also United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("[S]tudies demonstrate that the risk of recidivism is inversely related to an inmate's age."). Given Moore's age, he is less susceptible to the risk of recidivism, which weighs in his favor. But, Moore's age, standing alone, is not enough to further reduce his sentence.

Moore's criminal history is relevant. He has a lengthy record that dates to the age of nineteen. ECF 301, ¶ 40–49. He has been convicted, *inter alia*, of attempted robbery, grand larceny, violating the Texas "Controlled Substances Act," third-degree assault (twice), criminal possession of a controlled substance, and attempted criminal sale of a controlled substance. *Id.* ¶¶ 41–49. Moore also has a history of violating the conditions of his release. *Id.* ¶¶ 42, 46.

I must also consider the need to avoid unwarranted sentence disparities. As noted, Moore takes issue with the length of his reduced sentence, contending that it is "extraordinary." ECF 311

at 10. He states, *id.* at 14: "Courts in this District impose sentences of 25 years or less for even the most heinous murders." Moore cites examples of five different defendants who were sentenced in this District to support his contention. *Id.* (citing *United States v. Hernandez-Guevara*, PX-17-382; *United States v. Melendez-Rivera*, PX-17-154; *United States v. Lawson*, GLR-16-453; *United States v. Chase*, GLR-16-453; *United States v. Bazemore*, CCB-16-597).

Moore's 40-year sentence is not as "extraordinary" as he contends. ECF 311 at 10. I reiterate that Moore's Guidelines range for Count One alone is life imprisonment. And, even if the Court did not apply the murder cross-reference, Moore would be subject to a statutory mandatory minimum term of 35 years of imprisonment. In particular, Moore would face a ten year mandatory minimum period of incarceration as to Count One, because he was convicted of conspiring to distribute at least five kilograms of powder cocaine. *See* 21 U.S.C. § 841(b)(1)(A). The government argues that defendant would also face an "additional mandatory consecutive sentence totaling 25 years for his three convictions under Section 924(c)." ECF 324 at 11; *see* 18 U.S.C. § 924(c)(1)(A)(i) (requiring a five year mandatory minimum sentence for possession of a firearm "during and in relation to any . . . drug trafficking crime"); 18 U.S.C. § 924(c)(1)(A)(iii) (requiring a ten year mandatory minimum sentence for each offense of discharging a firearm "during and in relation to any . . . drug trafficking crime"); 18 U.S.C. § 924(c)(1)(D)(ii) (requiring all 924(c) convictions to run consecutive to "any other term of imprisonment imposed on the person . . ."); *Lora v. United States*, 599 U.S. 453, 457 (2023) (noting that a sentence imposed under Section 924(c) "must run consecutively, not concurrently, in relation to other sentences.").

As to the cases cited by Moore, he is correct that, in each case, the defendant was sentenced to a period of imprisonment that was less than the one here. But, there are important differences between those cases and this case. For one thing, in each case cited by Moore, the defendant

pleaded guilty, sparing the government, the court, the public, and witnesses the burden of a trial. Additionally, without minimizing the seriousness of those cases, several involved only one murder victim, as opposed to two.

Several other cases in this District provide guidance.  As noted, the government cites *United States v. Whisonant, et al.*, ELH-17-191, to support its opposition to a further reduction of defendant's sentence.  ECF 324 at 12.  There, several defendants were charged with various crimes. Each pleaded guilty to the offense of conspiracy to distribute heroin.  And, three of the defendants also pleaded guilty to offenses involving firearms.  In particular, one defendant pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime, while two other defendants pleaded guilty to discharging a firearm resulting in death, during and in relation to a drug trafficking crime.  The murder was unexpectedly captured, in real time, during an authorized wiretap.  One defendant received a total sentence of 360 months' imprisonment (ELH-17-191, ECF 180), another received a sentence of 420 months (*id.*, ECF 163), and still another received a sentence of 480 months of incarceration. *See id.*, ECF 184.  However, the sentence of 360 months was subsequently reduced to 295 months by Order of June 26, 2023, pursuant to § 3582(c)(1)(A)(i). *See* ECF 335.

Relevant here, the shooter pleaded guilty to conspiracy to distribute and possession with the intent to distribute heroin, in violation of 21 U.S.C. § 846 (Count One), and discharging a firearm resulting in death during and in relation to a drug crime, in violation of 18 U.S.C. §§ 924(c) and (j) (Count Five). *See* Docket, 01/17/2018; ECF 123 (Plea Agreement).  Notably, the Court applied the murder cross-reference to count one (ECF 188 (Amended PSR), ¶ 17), and sentenced the defendant to 360 months of incarceration as to that count.  ECF 184 (Judgment), at 2.  The

defendant was also sentenced to a consecutive term of 120 months of incarceration as to Count Five, for a total sentence of 480 months (40 years) of incarceration. *Id.*

So, that defendant received the same total sentence as Moore, even though he was twenty-five years of age at sentencing; pleaded guilty (thereby accepting responsibility); only had a criminal history category of II; and killed one person. ECF 188 at 3; ECF 188, ¶¶ 3, 10, 41. By contrast, Moore was 43 years of age at sentencing; did not plead guilty; has a criminal history category of V; and was convicted of discharging a firearm that resulted in the death of two people.

In *United States v. Floyd*, CCB-16-597, Floyd was one of several defendants convicted after a 25-day trial. *See id.*, ECF 477; ECF 491. In particular, Floyd was convicted of a racketeering conspiracy that included murders and drug conspiracy. Floyd was not the shooter, however. Judge Catherine Blake imposed a total sentence of 360 months (30 years) of imprisonment. *Id.*, ECF 691.

In *United States v. Blake*, ELH-06-394,[13] the defendant was convicted of carjacking resulting in death; conspiracy to possess a firearm in furtherance of a crime of violence; possession of a firearm in furtherance of a crime of violence; and murder resulting from possession of a firearm in furtherance of a crime of violence. *See id.*, ECF 62 (Judgment). In particular, the defendant was just seventeen years old when he participated in a carjacking in which the victim was murdered. *See id.*, ECF 123 at 3; *id.*, ECF 149 at 2. Despite the defendant's age, he was originally sentenced to life imprisonment. *Id.*, ECF 62. But, pursuant to a joint motion by the government and the defendant in connection with the defendant's petition under 28 U.S.C. § 2255, his sentence was reduced to forty years of imprisonment. *Id.*, ECF 123, ECF 127. Then, the

---

[13] This case was originally assigned to Judge Nickerson. It was reassigned to me on January 29, 2016, due to the retirement of Judge Nickerson. *See* Docket.

sentence was reduced again, to thirty years of imprisonment, pursuant to a joint motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *Id.*, ECF 165, ECF 168.

As indicated, the defendant in *Blake* was a teenager at the time of the crime. Moore was almost forty years of age at the time he committed his crimes. Moreover, the defendant in *Blake* had a criminal history category of II, and the government supported his § 2255 motion and his motion for compassionate release.

Moore's post sentencing conduct is also concerning. In particular, defendant has incurred fourteen infractions while incarcerated. *See* ECF 324-2 at 1–3. These include fighting; refusing to complete work assignments; being absent from work assignments; phone abuse (asking another inmate to pass messages for him); possessing an unauthorized item; and giving/accepting money without authorization. *Id.* And, in December 2021, approximately one year before Moore filed the Motion, he threatened bodily harm and refused to obey an order. *Id.* at 1. Moore's conduct while in BOP custody undermines his claims that he has "learned to respect the rule of law" and that he has undergone a "dramatic character change." ECF 311 at 11.

To be sure, Moore's post-sentencing conduct does reflect some positive accomplishments. He has completed a number of educational and vocational courses. *See* ECF 277-1 at 7. And, he has worked as a caregiver for mentally ill prisoners, assisting with their daily activities and providing them with companionship. ECF 288 at 14–21; *see also* ECF 311 at 9. Moreover, in connection with defendant's motion for compassionate release, Moore submitted letters from three correctional officers at the facility where Moore was previously incarcerated, who praised Moore's work ethic, rehabilitation, and work as a caregiver. *See* ECF 299-1; ECF 300-1. Moore has also "unequivocally" accepted responsibility for his criminal conduct and "does not seek to justify, diminish, or detract from the seriousness of his offenses." ECF 311 at 4.

Nevertheless, as I see it, Moore's forty-year sentence is sufficient but not greater than necessary to achieve the goals of sentencing. In particular, this was a very serious case, involving a large quantity of dangerous drugs and two drug-related murders. A substantial sentence is warranted, not only as punishment and to protect the public, but also to promote respect for the law. Moreover, defendant's institutional record substantiates my conclusion that release of defendant at this time is not appropriate.

## IV. Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 311). An Order follows, consistent with this Memorandum Opinion.

Date: February 18, 2025                         _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge